v. Decker Lampert Good morning, Your Honors, and may it please the court. Alexandra Lampert for Petitioner Appellee Mr. Doe. Under this court's order, in wait- I'm sorry to make clear the extent of my ignorance, but this John Doe and the previous John Doe are the same John Doe? Yes, Your Honor, they are the same individual- But you're saying- But represented by different counsel? Brooklyn Defender Services represents Mr. Doe in both cases, and in the prior case we also have additional counsel. Yes, Your Honor. Thank you. Under this court's decision in in-ray immigration petitions, which the government is ignoring, the government does not have the authority to remove Mr. Doe unless one of two conditions occurs. It first provides notice that it no longer intends to forbear, and then this court has ordered it must wait 21 days to effectuate the removal, or if the forbearance stay expires because this court denies either the petition for review or the motion for a stay. Unless one of those two things occurs, the government does not, in fact, have the authority to remove Mr. Doe, and that is a stay. As the Supreme Court held in Niken, a stay is connected to a judicial proceeding, and it is a temporary suspension of the government's authority to remove the individual. So no matter how you got there, it's a stay? It does satisfy the language that it is a court-ordered stay, and that is because in the court's order, the decision in in-ray immigration petitions, this court has set forth its own rules on top of a pre-existing government policy under which the government must take certain actions before that stay expires, and the fact that that's a time-limited stay, that if after the 21 days notice there's no further action of this court, then the stay expires, the fact that it's time-limited does not mean that it wasn't initially a court order imposing that time-limited stay. It's similar to the scenarios we see in the First Circuit and the Fourth Circuit. By rule-making authority, they have set forth a different type of structure, but ultimately leading to the same result of court-ordered stays that are temporary, 10 days in the First Circuit, 14 days in the Fourth, and those temporary stays are important, as this court recognized in Hechabria, for this court to exercise its statutory and constitutional role in judicial review. This court has to consider important questions, including whether an individual may be irreparably injured if deported, that they argue they're facing torture or death, like Mr. Doe in this case. And in the government's view, the government can simply deport that individual without necessarily giving this court time to consider those questions. That's why there is a temporary stay. Although this court can exercise its stay power, the inherent authority to issue stays in a variety of ways, that doesn't mean that the variety of ways are not court-ordered stays. The statute does not say that the court must issue a three-judge decision granting a motion for a stay. It simply says, order a stay. And this court and other circuit courts have exercised that authority in many ways, from administrative stays to temporary orders issued by one judge to a full decision on the merits of the stay motion. Section 1231, the language of that second provision, says that the removal period begins on the latest of the date the order of removal becomes administratively final. If the removal order is judicially reviewed and if the court orders a stay of the removal, the date of the court's final order, is the removal order judicially reviewed here? Yes, Your Honor. Mr. Doe filed a petition for review within 30 days of the BIA's decision. Although the only issue before this court is, practically speaking, the CAT grant, this court has jurisdiction and is currently reviewing, under the jurisdictional rules and FARA, which authorizes judicial review of CAT claims, both the removal order and the CAT order. I guess I'm just asking, I'm trying to understand this provision. The juxtaposition of the judicial review of the removal order and the order of the stay suggests to me that the stay is ordered based on a review of the petition, which I understood our forbearance policy is designed to achieve the exact opposite, that we don't look at each individual petition. I think that that section B has two parts to it. The first must be during judicial review of the removal order. So you're reading them disjunctively rather than as part of the stay determination? Right. If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien. And that fits with the general process that there are petitions for review filed for this court to judicially review whether or not the individual should be removed and the agency's decisions. And then if, in the course of that review, there is a court-ordered stay, that will suspend the running of the removal period. If there is no stay, then the removal period would run, an individual may be deported. That was Congress's intent in this amendment, which created this statute in 1996 in IRA-IRA, was to eliminate the automatic stay, which by statute attached to the filing of the petition for review. And instead, individuals could choose to litigate their petitions for review from abroad. And we have some examples that the amicus brief, the green brief, points out, which themselves further our evidence that this is a court-ordered stay. Because if an individual in detention decides, I no longer want to stay detained, perhaps they don't have a fear-based claim, so they don't fear the same sorts of irreparable injury as Mr. Doe, they may choose to withdraw their stay motion and be deported and continue to litigate judicial review at this court. But those individuals must first move this court to withdraw their stay motion in order to give ICE the authority to deport them. If it were completely a voluntary procedure of the government with no court order that was required to hold this stay in place, they wouldn't need to have first withdrawn their stay motion in order to enable ICE to deport them. And we also see an example cited at page 9 of the amicus brief of an individual the government erroneously deported who was subject to forbearance. This court then issued an order to show cause why that had occurred and the government brought the individual back. All of these examples show that the forbearance policy, and notably this court's decision in in-write immigration petitions, which recognizes it and sets forth separate rules to govern its expiration and how it can lift, satisfies Section 1231's language that a court orders a stay, which prevents the running of the removal period. And the government relies heavily on Guzman Chavez. Guzman Chavez is entirely consistent with this. Because in Guzman Chavez, which dealt with a withholding-only case, which this is not, they looked first to the statutory text and found none of the three conditions that Section 1231 sets forth, which prevent running of the removal period, are present in a withholding-only case. Here we meet one of those conditions. We have judicial review and a court-ordered stay. Guzman Chavez, in addition to looking to the text, looked then to the structure of the statute, which the Supreme Court has looked to repeatedly. Statutory analysis is both text, but not text in isolation. We must look to the full statutory structure. And as both Guzman Chavez describes and this court describes in Hecheverria, the INA sets forth in chronological order, starting from the initial initiation of a removal proceeding under Section 1226, governing the arrest and detention of removable individuals, through subsequent subsections, setting forth the rules to govern the removal proceedings, who is deportable, up until Section 1231, after a final order of removal. In Guzman Chavez, in a withholding-only case, all of the provisions related to how an individual could seek reasonable fear review and seek to exercise and seek withholding relief are found in Section 1231. But for Mr. Doe, there is no dispute. His removal proceedings initiated via notice to appear. He was in Section 1226, detention, had a removal proceeding governed by Section 1229. He is not in the withholding-only case. And the statutory structure is clear that for an individual like him, who is continuing to seek judicial review of the propriety of his removal, and who the government is not authorized to remove him under this court's orders, that satisfies Section 1231's language to prevent running of the removal period. And the district court thus correctly found that his detention at the time was governed by Section 1226C, and that he was owed a bond hearing after a period of prolonged detention, a point the government has not appealed and has waived the constitutional arguments with respect to the bond hearing. If I see I'm almost out of time, if the court has no further questions, I would turn briefly to the alternate argument we make. Very short. In the event the court were to disagree and find that Section 1231 governed, there still remain live constitutional questions as to whether he could have been held in prolonged detention without a bond hearing under that statute. And so just as the Supreme Court in Artiaga-Martinez remanded for those constitutional questions, we would ask the same to occur here. Could you expand on that just a little bit? Are you saying you send it back to the district court to assess detention under 1231, but he's not now detained? Yes. So we did raise that question in our brief, that it's unclear to us if the government in fact wishes to re-detain him. But presumably, they may. And if they do, we would argue that the question is not moot. If they are actively seeking to detain him, we would argue to the district court that they should not do so. That the district court's ruling of a bond hearing under Section 1226, the same ruling should have issued under 1231, that there was also a constitutional right to a bond hearing due to his prolonged detention, notwithstanding the switch in the statutory detention to prevent his re-detention. And none of those issues were briefed below because of the particular timing of how the BIA decision came out, essentially like crossing in the night. We got it in the mail the afternoon, and the next day the district court's decision issued. And so those simply weren't raised below, but are important constitutional questions that the district court should address in the first instance. Thank you. Your Honor, two points. The first, regarding in-ray petitions, immigration petitions for review. It doesn't establish a court order to stay. The order entered in this case and all cases pursuant to that order, pursuant to that opinion, only orders that the proceedings within this case, specifically petitioner's time to file a scheduling notification,  and that the petitioner's time to file a scheduling notification for a period of 90 days so that petitioner and the government may determine whether remand of this case to the BIA is warranted. Doesn't it provide an impediment to removal, as it was argued? Your Honor, the impediment is not the order. The impediment is the forbearance policy. I'm asking you, once a forbearance order is in place, isn't that an impediment to removal? Your Honor, I don't agree that there is a forbearance order. There is no forbearance order. It's a forbearance policy, and there's an order entered into the case tolling the deadlines. Now, counsel has pointed out to other circuits' practices. Other circuits' practices involve actually entering an order, be it administrative or not, in the noncitizen's pending petition for review case. In this case, there is a pending motion for stay. It's been pending since, I believe, around November 2021. If the court wanted to order a stay, it has the power to do so. It is a live controversy. It's fully briefed, and it can do so. But the forbearance policy is not a stay. It is not an order of the court. Under what circumstances is Mr. Doe now free of detention? The circumstances under which he is currently free is the district court's order that he is held pursuant to 1226. He received a bond hearing before an immigration judge, and he was released pursuant to that hearing. And you think he could be removed, like, tomorrow? Your Honor, the government's position is that it could, if it decided to, provide 21 days' notice. So that's the impediment. They couldn't just remove him tomorrow. Your Honor, it is certainly, again, if the government were to abandon its policy, it could remove him. They would give him 21 days' notice pursuant to the forbearance policy. Isn't that correct? Correct. In fact, it is a forbearance policy. Because he has a case pendant, the one we heard immediately before this. Correct, Your Honor. But, again, I'm drawing a distinction between the policy, which the government has voluntarily said, we will not remove you, we will create an impediment upon ourselves to facilitate court review, with an impediment that is established by an order of the court. You're relying on the text of 1231 and arguing that there's no court order. There's just the government's acquiescence or agreement to a policy and informal arrangements with this court on how to process these petitions. Yes, Your Honor, as the government has for about 28 years. I know I'm over time. Just very briefly on the last point, Your Honor. There was no claim in the petition, the previous petition, for detention pursuant to 1231. If that were to become a live issue, there are various ways that could proceed. If he is re-detained, that it could become live, they could file a new petition. The government's position is that if the court agrees that Mr. Doe's detention is pursuant to 1231, that particular habeas petition has been mooted. Thank you, Your Honor. That's the last case to be argued this morning, and thank you both. Well argued. I will ask the deputy to adjourn court. Court is adjourned.